# EXHIBIT B

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

**FILED**
Superior Court of California
County of Los Angeles

**02/21/2023**

David W. Slayton, Executive Officer / Clerk of Court

By: _____ K. Martinez _____ Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

MICHAEL GONZALES, individually and on behalf of all others similarly situated,

        Plaintiff,

        v.

KAGED MUSCLE, LLC, a Delaware limited liability company, and DOES 1 through 25, inclusive,

        Defendants.

Case No. 22STCV21890

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*
2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*
3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.*
4. UNJUST ENRICHMENT
5. INTENTIONAL MISREPRESENTATION
6. NEGLIGENT MISREPRESENTATION

Filed: July 6, 2022
Trial Date: None Set

Electronically Received 02/21/2023 12:00 AM

**INTRODUCTION**

1.      Defendant Kaged Muscle, LLC ("Defendant") manufactures and sells a popular line of powder supplement products throughout the United States. To increase profits at the expense of consumers and fair competition, Defendant deceptively sells its supplements in oversized packaging that does not reasonably inform consumers that they are nearly half empty. Defendant's slack-fill scam extends to all sizes and varieties of its "In-Kaged Intra-Workout" supplements sold in opaque containers (the "Product"). Defendant dupes unsuspecting consumers across America to pay premium prices for empty space. In one version of the Product, the opaque container below is a true and correct image of Defendant's In-Kaged Premium Intra-Workout Product, evidencing the deception. The first photograph shows the Product as it appears to the purchaser, and the second photograph shows that the Product packaging is nearly 60% empty.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18       2.       Defendant markets the Product in a systematically misleading manner by representing it

19  as adequately filled when, in fact, it contain an unlawful amount of empty space or "slack-fill."

20  Defendant underfills the Product for no lawful reason. The front of the Product's packaging does not

21  include any information that would reasonably apprise Plaintiffs of the quantity of product relative to

22  the size of the container, such as a fill line.

23       3.       Defendant underfills the Product to save money (by not filling the containers) and to

24  deceive consumers into purchasing the Product over its competitors' products. Defendant's slack-fill

25  scheme not only harms consumers, but it also harms its competitors who have implemented labeling

26  changes designed to alert consumers to the true amount of product in each container.

27       4.       Accordingly, Defendant has violated the California Consumers Legal Remedies Act

28  ("CLRA"), particularly California Civil Code sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and

1770(a)(9). As such, Defendant has committed per se violations of the Unfair Competition Law ("UCL"), Business & Professions Code section 17200, et seq. and the False Advertising Law ("FAL"), Business & Professions Code section 17500, et seq.

5.      Plaintiff and consumers have, accordingly, suffered injury in fact caused by the false, unfair, deceptive, unlawful, and misleading practices set forth herein, and seek injunctive relief, as well as, inter alia, compensatory damages, statutory damages, restitution, and attorneys' fees.

6.      Several California courts have found that cases involving nearly identical claims are meritorious and appropriate for class treatment. *See, e.g.*, *Winkelbauer v. Orgain Mgmt. et. al*, Case No. 20STCV44583 (L.A.S.C. May 20, 2021) (defendant's demurrer to claims involving slack-filled protein powder products overruled); *Merry, et al. v. International Coffee & Tea, LLC dba The Coffee Bean*, Case No. CIVDS1920749 (San Bernardino Superior Court Jan. 27, 2020) (defendant's demurrer to slack-filled powder container claims overruled); *Tsuchiyama v. Taste of Nature, Inc*., Case No. BC651252 (L.A.S.C. Feb. 28, 2018) (defendant's motion for judgment on the pleadings involving slack-filled Cookie Dough Bites® candy box claims denied and nationwide settlement subsequently certified through Missouri court); *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (April 29, 2020) (certifying as a class action, over opposition, slack-fill claims brought under California consumer protection laws).

**PARTIES**

7.      Plaintiff Michael Gonzales is, and at all times relevant hereto was, a citizen of California.  He purchased Defendant's In-Kaged Premium Intra-Workout Product for personal use during the class period, paying approximately $30.00 for the Product. In making his purchase, Plaintiff relied upon the opaque packaging, including the size of the container and product label, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Products. Plaintiff understood the size of the container and product label to indicate that the amount of protein powder contained therein was commensurate with the size of the container, and he would not have purchased the Product, or would not have paid a price premium for the Product, had he known that the size of the

container and product label were false and misleading. If the Product's packaging and labels were not misleading, then Plaintiff would purchase the Product in the future.

8.     Defendant, Kaged Muscle, LLC is a Delaware limited liability company.  Defendant, directly and through its agents, conducts business nationwide. Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California, as well as the nation at large. Defendant is the owner, manufacturer, and distributor of the Product, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Product.

9.     At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants.  Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Kaged Muscle, LLC and DOE Defendants will hereafter collectively be referred to as "Defendants").

10.     The true names and capacities of the Defendants sued herein as DOES 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sue such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.   Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

11.     In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, and deceptive representations to induce members of the public to purchase the Product. Defendant participated in the making of such representations in that it did disseminate or cause to be disseminated said misrepresentations.

12.     Defendant, upon becoming involved with the manufacture, advertising, and sale of the Product, knew or should have known that its advertising of the Product's packaging, specifically by representing that they were full, was false, deceptive, and misleading. Defendant affirmatively misrepresented the amount of powder contained in the Product's packaging in order to convince the public and consumers of the Product to purchase the Product, resulting in profits of millions of dollars or more to Defendant, all to the damage and detriment of the consuming public.

13.     Defendant has created and still perpetuates a falsehood that Product's packaging contains an amount of powder commensurate with the size of the box, though they actually contain nonfunctional, unlawful slack-fill. As a result, Defendant's consistent and uniform advertising claims about the Product are false, misleading, and/or likely to deceive in violation of California packaging and advertising laws.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action.  This Court has personal jurisdiction over Defendant because Defendant has conducted and continues to conduct substantial business in the State of California, and because Defendant's principal place of business is located in Huntington Beach, California.

15.     Venue is proper in this Court because Defendants conduct substantial business in this County, and because a substantial portion of the misconduct alleged herein occurred in the County of Los Angeles.

## FACTUAL BACKGROUND

16.     The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13 seconds deciding whether to make an in-store purchase;[1] this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased[2].

17.     Accordingly, Defendant chose a certain size container for its Product to convey to consumers that they are receiving a certain and substantial amount of powder product commensurate with the size of the container. Such representations constitute an express warranty regarding the Product's content.

---

[1]  Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-secondwindow./.

[2] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

18.     Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

19.     Defendant falsely represents the quantity of product in each of the Product's opaque containers through its packaging. The size of each container leads the reasonable consumer to believe he or she is purchasing a container full of powder product when, in reality, what he or she actually receives is significantly less than what is represented by the size of the container.

20.     Even if Plaintiff and other reasonable consumers of the Product had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity of powder product meaningfully different from their expectation of an amount of powder commensurate with the size of the container.

21.     Prior to the point of sale, the Product's packaging does not allow for a visual or audial confirmation of the contents of the Product. The Product's opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" the Product before opening the container, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the Products.

22.     The other information that Defendant provides about the quantity of powder on the front and back labels of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the container itself. For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of powder to be expected, such as a fill line.

23.     Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of powder contained in the Products' containers that would be different from their expectation that the quantity of powder is commensurate with the size of the container.

24.     Plaintiff would not have purchased the Product had they known that the Product contained slack-fill that serves no functional or lawful purpose.

**None of the Slack-Fill Statutory Exceptions Apply to the Product**

25.     The slack-fill in the Product's containers does not protect the contents of the packages. In fact, because the Product is a powder, there is no need to protect the Product with the slack-fill present.

26.     The machines used to package the Products would not be affected if there was more powder product added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

27.     Because the packages are filled to less than half of their capacity, Defendant can increase the Product's fill level significantly without affecting how the containers are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of powder product actually in the container, consistent with the law.

28.     The slack-fill present in the Product's containers is not a result of the powder product settling during shipping and handling. Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

29.     Even if *some* product settling may occur, there is no reason why the Product's containers are nearly half empty, when competitor products – such as the SuperiorSource product below – which have similar product density, shape, and composition as Defendant's product, are filled nearly 90% full.

30.     The packages do not perform a specific function that necessitates the slack-fill. This safe harbor would only apply if a specific function were "inherent to the nature of the food and [] clearly communicated to consumers." The packages do not perform a function that is inherent to the nature of the food. Defendant did not communicate a specific function to consumers, making this provision inapplicable.

31.     The Product's packaging is not reusable or of any significant value to the Product independent of its function to hold the powder product. The Product's containers are intended to be discarded immediately after the powder product is used.

32.     The slack-fill present in the Product's containers does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

33.     Defendant can easily increase the quantity of powder in each container (or, alternatively, decrease the size of the containers) significantly.

**Comparable Products Serve as Additional Evidence of Nonfunctional Slack-Fill**

34.     Contrast the Product's packaging with a comparator product, such as SuperiorSource Keto Collagen, which is also packaged in an opaque container. The SuperiorSource container measures to a vertical height of approximately 7 inches. The container is filled with product to a height of approximately 6.3 inches. Therefore, this product is approximately 90% filled with a similar powder product. Below is a true and correct image of the comparator product. The red line represents the actual fill line, below which is product, and above which is nonfunctional empty space.



35.     The SuperiorSource packaging provides additional evidence that the slack-fill present in the Product's packaging is nonfunctional.

36.     The SuperiorSource packaging provides additional evidence that the slack-fill in the Product is not necessary to protect and, in fact, does not protect, the contents of the Product; is not a requirement of the machines used for enclosing the contents of the Product; is not a result of unavoidable product settling during shipping and handling; is not needed to perform a specific function; and is not part of a legitimate reusable container.

37.     The SuperiorSource packaging provides additional evidence that Defendant is able to increase the level of fill inside the Product's containers.

38.     The SuperiorSource packaging provides additional evidence that Defendant has reasonable alternative designs available to it in its packaging of the Product.

39.     Plaintiff did not expect that the Product would contain nonfunctional slack-fill, especially given that nonfunctional slack-fill, as opposed to functional slack-fill, is prohibited by California law.

40.     The Product is made, formed, and filled so as to be misleading. The Product is, therefore, misbranded.

41.     Defendant's false, deceptive, and misleading label statements are unlawful under state consumer protection and packaging laws.

42.     Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the Class.

**CLASS ACTION ALLEGATIONS**

43.     Plaintiff bring this action on his own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

> All consumers throughout the United States who purchased the Product for personal use during the applicable limitations period.

Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the

Product. Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

44.    The Class is comprised of many thousands of persons. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

45.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common questions of law and fact include, but are not limited to, the following:

a.    The true nature and amount of product contained in each Product's packaging;

b.    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

c.    Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code section 17200, *et seq*.;

d.    Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code section 17200, *et seq*.;

e.    Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code section 17500, *et seq*.;

f.    Whether Defendant made false and misleading representations in its advertising and labeling of the Product;

g.    Whether Defendant knew or should have known that the misrepresentations were false;

h.    Whether Plaintiff and the Class paid more money for the Product than they actually received;

i.    How much more money Plaintiff and the Class paid for the Product than they actually received;

j.    Whether Defendant was unjustly enriched at the expense of Plaintiff and the Class members;

k.    Whether Defendant intentionally misrepresented the amount of powder contained in the Product's packaging; and

l.   Whether Defendant negligently misrepresented the amount of powder contained in the Product's packaging.

46.   Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained on packaging and labeling that was seen and relied on by Plaintiff and members of the Class.

47.   Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

48.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false, deceptive, and misleading representations. Plaintiff purchased the Product because of the size of the containers and the product labels, which they believed to be indicative of the amount of powder product contained therein as commensurate with the size of the container. Plaintiff relied on Defendant's representations and would not have purchased the Product if they had known that the packaging, labeling, and advertising as described herein was false and misleading.

49.   The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions and by Internet publication, radio, newspapers, and magazines.

50.   A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

51.   Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the

1  risk of inconsistent or varying adjudications with respect to individual members of the Class that

2  would establish incompatible standards of conduct for Defendant.

3      52.    Absent a class action, Defendant will likely retain the benefits of its wrongdoing.

4  Because of the small size of the individual Class members' claims, few, if any, Class members could

5  afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the

6  Class members will continue to suffer losses and Defendant will be allowed to continue these

7  violations of law and to retain the proceeds of its ill-gotten gains.

8                           **<u>FIRST CAUSE OF ACTION</u>**

9              **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

10             **BUSINESS & PROFESSIONS CODE § 17200, *et seq*.**

11     53.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and

12  incorporate the same as if set forth herein at length.

13     54.    The California Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health

14  & Safety Code Section 109875 *et seq.*, declares any food to be misbranded if it is false or misleading

15  in any particular or if the labeling does not conform with the requirements for nutrition labeling. Cal.

16  Health & Safety Code Sections 110660, 110665, 110670.

17     55.    The UCL prohibits "any unlawful, [or] unfair... business act or practice." Cal. Bus &

18  Prof. Code § 17200.

19                              **A. "Unfair Prong"**

20     56.    Under California's Unfair Competition Law, Cal. Bus. & Prof. Code section 17200, *et*

21  *seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to

22  consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho*

23  *v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

24     57.    Defendant's actions alleged herein do not confer any benefit to consumers.

25     58.    Defendant's actions alleged herein cause injuries to consumers, who do not receive a

26  quantity of product commensurate with their reasonable expectations.

27     59.    Defendant's actions alleged herein cause injuries to consumers, who do not receive a

28  level of powder commensurate with their reasonable expectations.

60.     Defendant's actions alleged herein cause injuries to consumers, who end up overpaying for the Product and receiving a quantity of powder less than what they expected to receive.

61.     Consumers cannot avoid any of the injuries caused by Defendant's actions as alleged herein.

62.     Accordingly, the injuries caused by Defendant's conduct alleged herein outweigh any benefits.

63.     Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business & Professions Code Section 17200, weighing the utility of the defendant's conduct against the gravity of the harm to the alleged victim.

64.     Here, Defendant's challenged conduct of has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

65.     The California legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in California Business & Professions Code section 12606.2 and California Health and Safety Code Section 110100.

66.     The significant nonfunctional slack-fill contained in the Product is tethered to a legislative policy declared in California according to Cal. Business & Professions Code section 12606.2 and Cal. Health & Safety Code section 110100.

67.     Defendant's packaging of the Product, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

68.     Defendant knew or should have known of its unfair conduct.

69.     As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business & Professions Code section 17200.

70.     There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have used packaging appropriate for the amount of powder product contained within the Product.

71.     All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's unfair conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

72.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for this product.  Specifically, Plaintiff paid for powder product he never received. Plaintiff would not have purchased the Product if he had known that the Product's packaging contained nonfunctional slack-fill.

### B. "Unlawful" Prong

73.     California Business & Professions Code section 17200, *et seq.*, identifies violations of other laws as unlawful practices that the unfair competition law makes independently actionable.

74.     Defendant's packaging of the Product, as alleged in the preceding paragraphs, violates California Civil Code section 1750, *et. seq.*, California Business & Professions Code section 17500, *et. seq.*, and 21 C.F.R section 100.100.

75.     Defendant's packaging of the Product, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

76.     Defendant knew or should have known of its unlawful conduct.

77.     As alleged herein, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business & Professions Code section 17200.

78.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have either used packaging appropriate for the amount of powder product contained therein or indicated how much powder the Product contained with a clear and conspicuous fill line.

79.     All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's unlawful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

80.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for this product.  Specifically,

Plaintiff paid for powder product they never received. Plaintiff would not have purchased the Product if he had known that the packaging contained nonfunctional slack-fill.

81.     As a result of the conduct described herein, Plaintiff and members of the Class, pursuant to section 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendant and such other orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Product as a result of the wrongful conduct of Defendant.

a.   Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

(1)   The applicable limitations period is four years for claims brought under the UCL, which is one year longer than the applicable statute of limitations under the FAL and CLRA. Thus, class members who purchased the Product between 3 and 4 years prior to the filing of the complaint will be barred from the Class if equitable relief were not granted under the UCL.

(2)   The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein to include, for example, the overall unfair marketing scheme of underfilling the Product's packaging. Thus, Plaintiff and class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and certain statutorily enumerated conduct).

(3)   Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively underfill the Product's packaging. Injunctive relief is necessary to prevent Defendant from continuing to engage in this unfair and/or unlawful conduct described herein and to prevent future harm— none of which can be achieved through available legal remedies. Further, injunctive

relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unlawful marketing efforts. Such modifications could include, but are not limited to, shrinking the packaging, adding more powder product to the packaging, or adding a fill line on the front label. Such relief is not available through a legal remedy, as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members will pay for the underfilled Products), rendering injunctive relief a necessary remedy.

82.     Pursuant to Civil Code § 3287(a), Plaintiffs and the Class are further entitled to prejudgment interest as a direct and proximate result of Defendant's unfair and unlawful business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the Class are entitled to interest in an amount according to proof.

## SECOND CAUSE OF ACTION

### FALSE AND MISLEADING ADVERTISING IN VIOLATION OF

### BUSINESS & PROFESSIONS CODE § 17500, *et seq*.

83.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

84.     Plaintiff brings this claim individually and on behalf of the Class.

85.     California's False Advertising Law, California Business & Professions Code section 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and

which is known, or which by the exercise of reasonable care should beknown, to be untrue or misleading."

86.    Defendant knowingly manipulated the physical dimensions of the Product's containers, or stated another way, under-filled the amount of powder product in the Product, as a means to mislead the public about the amount of powder product contained in each package.

87.    Defendant controlled the packaging of the Product. It knew or should have known, through the exercise of reasonable care, that its representations about the quantity of powder product contained in the Product were untrue and misleading.

88.    Defendant's action of packaging the Product with nonfunctional slack-fill, instead of including more powder in the container or decreasing the size of the container, is likely to deceive the general public.

89.    Defendant's actions were false and misleading, such that the general public is and was likely to be deceived, in violation of section 17500.

90.    As a direct and proximate result of Defendant's conduct alleged herein in violation of the FAL, Plaintiff and members of the Class, pursuant to section 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendant and requiring Defendant to disclose the true nature of its misrepresentations.

a.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

(1)    The scope of permissible plaintiffs under the FAL is broader than the CLRA to include, for example, individuals or entities who purchased the Product for nonpersonal, non-family, and non-household purposes. Thus, Plaintiff and class members may be entitled to restitution under the FAL, while not entitled to damages under the CLRA.

(2)    Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively underfill the Product's packaging. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm—none of which can

be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Product that has resulted from years of Defendant's unfair and unlawful marketing efforts. Such modifications would include, but are not limited to, shrinking the packaging, adding more powder product to the packaging, or adding a fill line the front label. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay for the underfilled Products), rendering injunctive relief a necessary remedy.

91.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product in reliance upon the claims by Defendant that the Product was of the quantity represented by Defendant's packaging and advertising. Plaintiff would not have purchased the Product if he had known that the packaging and labeling as alleged herein were false.

92.     Plaintiff and members of the Class also request an order requiring Defendant disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interests and attorneys' fees.

## **THIRD CAUSE OF ACTION**

### **VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,**

### **CALIFORNIA CIVIL CODE § 1750, *et seq*.**

93.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

94.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

95.    The practices described herein, specifically Defendant's packaging, advertising, and sale of the Product, were intended to result and did result in the sale of the Product to the consuming public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA by: (1) misrepresenting the approval of the Product as compliant with the Sherman Law; (2) representing the Product have characteristics and quantities that they do not have; (3) advertising and packaging the Product with intent not to sell them as advertised and packaged; and (4) representing that the Product have been supplied in accordance with a previous representation as to the quantity of powder contained within each container, when they have not.

96.    Defendant packaged the Product in containers that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and the Class.

97.    Defendant deceived Plaintiff and the Class by misrepresenting the Product as having characteristics and quantities which they do not have, e.g., that the Product is free of nonfunctional slack-fill when they are not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

98.    Defendant deceived Plaintiff and the Class by packaging and advertising the Product with intent not to sell them as advertised and by intentionally underfilling the Product's containers and replacing powder product with nonfunctional slack-fill. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

99.    Defendant deceived Plaintiff and the Class by representing that the Product was supplied in accordance with an accurate representation as to the quantity of powder product contained therein when they were not. Defendant presented the physical dimensions of the Product's packaging to Plaintiff and the Class before the point of purchase and gave Plaintiff and the Class a reasonable expectation that the quantity of product contained therein would be commensurate with the size of the

packaging. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

100.    Defendant knew or should have known, through the exercise of reasonable care, that the Product's packaging was misleading.

101.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

102.    Defendant's packaging of the Product was a material factor in Plaintiff's and the Class's decisions to purchase the Product. Based on Defendant's packaging of the Product, Plaintiff and the Class reasonably believed that they were getting more product than they actually received. Had they known the truth of the matter, Plaintiff and the Class would not have purchased the Product.

103.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair and unlawful conduct. Specifically, Plaintiff paid for powder product they never received. Plaintiff would not have purchased the Product had they known the container contained nonfunctional slack-fill.

104.    Plaintiff respectfully requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2). In addition, Defendant should be compelled to provide restitution and damages to consumers who paid for Product that are not what they expected to receive due to Defendant's misrepresentations.

a.  Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

   (1)  Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively underfill the Product's packaging. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm – none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Product that has resulted from years of Defendant's unfair and unlawful

marketing efforts. Such modifications would include, but are not limited to, shrinking the packaging, adding more powder product to the packaging, or adding a fill line on the front label. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay for the underfilled Product), rendering injunctive relief a necessary remedy.

## **FOURTH CAUSE OF ACTION**

### **Restitution Based on Quasi-Contract/Unjust Enrichment**

105.    Plaintiff repeats and realleges the allegations set forth above and incorporate the same as if set forth herein at length.

106.    Plaintiff brings this cause of action individually and on behalf of all members of the Class against Defendant.

107.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Product to Plaintiff and the Class in a manner that was unfair, unconscionable, and oppressive.

108.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and the Class.

109.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

110.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

111.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Product to Plaintiff

and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances constitutes unjust enrichment.

112.    The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendant.

113.    Plaintiff and members of the Class have no adequate remedy at law.

114.    Plaintiff and the Class have reasonably and detrimentally relied on Defendant's misrepresentations when purchasing the Product and, had they known the truth, they would not have purchased the Product or would have paid significantly less for the Product.

115.    Therefore, as a direct and proximate result of Defendant's unlawful actions, Plaintiff and members of the Class have suffered injury in fact.

## SIXTH CAUSE OF ACTION

### Intentional Misrepresentation

116.    Plaintiff repeats and realleges all of the allegations contained above and incorporate the same as if set forth herein at length.

117.    Plaintiff brings this cause of action individually and on behalf of all members of the Class against Defendant.

118.    Defendant has filled and packaged the Product in a manner indicating that the Product is adequately filled with powder. However, the Product contains significantly less powder product than advertised and instead contain a substantial amount of nonfunctional slack-fill. Defendant misrepresents the quantity of powder product contained within the Product's packaging.

119.    Defendant's misrepresentations regarding the Product are material to a reasonable consumer, as they relate to the quantity of product received by consumers. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision.

120.    At all relevant times when such misrepresentations were made, Defendant knew or should have known that the representations were misleading.

- 23 -

121.     Defendant intended for Plaintiff and the Class to rely on the size and style of the Product's packaging, as evidenced by Defendant's intentional manufacturing, marketing, and selling of packaging that is significantly larger than is necessary to contain the volume of the contents within them.

122.     Plaintiff and the Class reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Product, and had they known the truth, they would not have purchased the Product or would have purchased them at significantly lower prices.

123.     As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and the Class have suffered injury in fact.

## SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation

124.     Plaintiff repeats and realleges all of the allegations contained above and incorporate the same as if set forth herein at length.

125.     Plaintiff brings this cause of action individually and on behalf of the Class against Defendant.

126.     Defendant has filled and packaged the Product in a manner indicating that the Product is adequately filled with powder product. However, the Product contains significantly less powder product than advertised and instead contain a substantial amount of nonfunctional slack-fill. Defendant misrepresents the quantity of powder product contained within the Product's packaging.

127.     Defendant's misrepresentations regarding the Product are material to a reasonable consumer, as they relate to the quantity of product received by the consumer. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision.

128.     At all relevant times when such misrepresentations were made, Defendant knew or should have known that the Product was not adequately filled with powder but instead contained a substantial amount of nonfunctional slack-fill.

129.    Defendant intended for Plaintiff and the Class to rely on the size and style of the Product's packaging, as evidenced by Defendant's packaging that is significantly larger than is necessary to contain the volume of the powder product therein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

A.    An Order certifying the Class, appointing Plaintiff as class representative, and designating Plaintiff's counsel as counsel for the Class;

B.    An order enjoining Defendant from continuing to package and/or label the as challenged herein;

C.    Damages against Defendant in an amount to be determined at trial, together with pre- and post- judgement interest at the maximum rate allowable by law on any amounts awarded;

D.    Restitution and/or disgorgement in an amount to be determined at trial;

E.    Reasonable attorneys' fees and costs; and

F.    Granting such other and further as may be just and proper.

Dated:  February 20, 2023                    PACIFIC TRIAL ATTORNEYS, APC

By:_____

Scott. J. Ferrell
Attorneys for Plaintiff

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place, Suite 800, Newport Beach, CA 92660.

On February 20, 2023, I served the foregoing document described as **FIRST AMENDED CLASS ACTION COMPLAINT** the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐     (BY MAIL)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐     (BY OVERNIGHT FEDERAL EXPRESS)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier.  Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐     (BY HAND DELIVERY)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier.  I caused such document to be delivered by hand to the addresse(s) designated.

☐     (BY ELECTRONIC SERVICE)  My electronic service address is ckirshner@pacifictrialattorneys.com.   I am electronically serving the document described above and a copy of this declaration to the person, on the date shown below, to the email addresses of the persons listed in the attached service list.

☒     (BY ELECTRONIC SERVICE via USA Legal) I am electronically serving the document described above and a copy of this declaration to the person, on the date shown below, to the email addresses of the persons listed in the attached service list.  I am readily familiar with the business' practice for filing electronically, and that the document would be electronically served the same day in the ordinary course of business following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on February 20, 2023, at Newport Beach, California.

Mandy K. Jung

- 26 -
PROOF OF SERVICE

**SERVICE LIST**

Brett N. Taylor
COZEN O'CONNOR
601 S Figueroa St., Ste 3700
Los Angeles, CA 90017
Tel: (213)892-7900
Email: btaylor@cozen.com

Attorneys for Defendant
KAGED MUSCLE, LLC